MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:       2026 ME 45
Docket:         Cum-25-313
Argued:         February 3, 2026
Decided:        May 19, 2026

Panel:          STANFILL, C.J., and MEAD, CONNORS, LAWRENCE, DOUGLAS, and LIPEZ, JJ.

ROBERTO VALMONT-OLIVIER

v.

ENVIROVANTAGE, INC.

CONNORS, J.

[¶1] Envirovantage, Inc., appeals from an order of the Superior Court (Cumberland County, *McKeon, J.*) denying its motion for summary judgment on the basis of immunity under the Workers' Compensation Act, 39-A M.R.S. § 104 (2023),[1] from suit on Roberto Valmont-Olivier's claim for negligence. The questions before us are whether the law of Maine or Massachusetts governs the immunity issue and, if Massachusetts law applies, whether Envirovantage is immune. We conclude that Massachusetts law applies and, under that law, that Envirovantage is not immune from suit, and we therefore affirm.

---

[1] Section 104 has been amended since Valmont-Olivier filed the instant complaint, though not in any way material to this appeal. *See* P.L. 2023, ch. 126, § 1 (effective Oct. 25, 2023) (codified at 39-A M.R.S. § 104).

2

# I. BACKGROUND

[¶2]  The following facts are drawn from the summary judgment record and are viewed in the light most favorable to Valmont-Olivier as the nonmoving party.[2]  *See McDonald v. City of Portland*, 2020 ME 119, ¶ 11, 239 A.3d 662.

[¶3]  In May 2020, Enviro Staffing, an employment staffing firm incorporated in Florida and authorized to do business in Massachusetts, hired Valmont-Olivier, a resident of Massachusetts.  While employed by Enviro Staffing, Valmont-Olivier was assigned to work for Envirovantage, a New Hampshire corporation.  The job site was located in Portland, Maine, and Valmont-Olivier resided at a hotel in Maine for the duration of this work.

---

[2]  Envirovantage asserts that we should instead view the facts in the light most favorable to it as the nonprevailing party and cites two recent cases in which we indicated that we applied that standard.  *See Carney v. Hancock Cnty.*, 2025 ME 36, ¶ 2, 334 A.3d 717; *Fama v. Bob's LLC*, 2024 ME 73, ¶¶ 1-2, 322 A.3d 1247.  It is a longstanding rule that a court considering a motion for summary judgment must view the facts in a light favorable to the nonmoving party.  *See, e.g., Rodriguez v. Town of Moose River*, 2007 ME 68, ¶ 19, 922 A.2d 484; *see also United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) ("On summary judgment the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion.")  The references in *Carney* and *Fama* to the "nonprevailing" party can be traced back to a citation to the usual appeal in the summary judgment context, in which a final judgment has been entered granting a summary judgment and the nonmoving appellant *is* perforce the nonprevailing party.  *See Fama*, 2024 ME 73, ¶ 2, 322 A.3d 1247 (citing *Dorsey v. N. Light Health*, 2022 ME 62, ¶ 2, 288 A.3d 386).  When an interlocutory appeal of a denial of summary judgment is permitted, however, as in the context in which immunity has been denied, the appellant is the movant, and we clarify that the touchstone remains viewing the facts in the light most favorable to the nonmovant.

[¶4]   The relationship between Envirovantage and Enviro Staffing was governed by a "General Staffing Agreement."[3]  The Staffing Agreement provided that Enviro Staffing would recruit and assign employees to perform work under Envirovantage's supervision, pay wages to these employees, provide them with benefits, withhold payroll taxes, provide unemployment insurance and workers' compensation benefits, and handle unemployment and workers' compensation claims for these employees.[4]   In turn, Envirovantage would, among other responsibilities, supervise the employees on site.  The Staffing Agreement further provided that Enviro Staffing would invoice Envirovantage "for services provided under this agreement on a weekly basis."

[¶5]   Separately, Envirovantage had its own policy providing workers' compensation coverage in Maine.

[¶6]   On June 8, 2020, Valmont-Olivier was injured at the Envirovantage job site in Portland, Maine.   An employee of Envirovantage was the superintendent and foreman that day.   As a result of these injuries,

---

[3] This agreement contained a choice of law provision that provided that the agreement would be governed by the laws of Massachusetts.

[4] The following was written in handwriting on the Staffing Agreement: "If at any time or any reason there is a lapse in workers compensation [Enviro Staffing] will immediately notify [Envirovantage] and remove all employees from site. [Envirovantage] will deduct the cost of workers compensation premiums at [sic] rate they would be charged for all hours [Enviro Staffing] employees worked without proper insurance in place."

4

Valmont-Olivier filed a workers' compensation claim against Enviro Staffing in Massachusetts, which ultimately settled.

[¶7]   On May 30, 2023, Valmont-Olivier filed a complaint against Envirovantage in Maine Superior Court, alleging one count of negligence.   On September 25, 2024, Envirovantage moved for summary judgment on the grounds that it was entitled to immunity under 39-A M.R.S. § 104.[5]   After a hearing, the court denied Envirovantage's motion for summary judgment on the grounds that (1) the action was governed by Massachusetts law, so section 104 did not apply, and (2) under Massachusetts law, Envirovantage was not immune from suit.   Envirovantage timely appealed.   *See* M.R. App. P. 2B(c)(1).

## II.  DISCUSSION

[¶8]   "We review a denial of a motion for summary judgment based on a claim of immunity for errors of law, viewing the evidence in the light most favorable to the nonmoving party."   *McDonald*, 2020 ME 119, ¶ 11, 239 A.3d 662 (quotation marks omitted).[6]   Although denials of summary judgment are not ordinarily appealable, the denial of a motion for summary judgment based

[5] 39-A M.R.S. § 104 provides, in relevant part, that "[a]n employer that uses a private employment agency for temporary help services is entitled to the same immunity from civil actions by employees of the temporary help service as is granted with respect to the employer's own employees as long as the temporary help service has secured the payment of compensation in conformity with [39-A M.R.S. §§ 401-407]."

[6] See *supra* n.1.

on a claim of immunity under 39-A M.R.S. § 104 is immediately appealable under the death knell exception to the final judgment rule. *Fama*, 2024 ME 73, ¶¶ 7-8, 322 A.3d 1247; *see also Est. of Moulton v. Puopolo*, 5 N.E.3d 908, 916 (Mass. 2014) (permitting interlocutory appeal of denial of motion to dismiss based upon claim that defendants were immune under the Massachusetts Workers' Compensation Act).

[¶9] Valmont-Olivier has conceded that if section 104 applies to this action, Envirovantage would be immune from suit. Accordingly, the questions before us are (A) whether Massachusetts law applies to the question of immunity and (B) if Massachusetts law applies, whether Envirovantage is immune from suit.

## A. Massachusetts law applies to the question of workers' compensation immunity.

[¶10] Envirovantage argues that the trial court erred in concluding that Massachusetts law applied to the issue of immunity because Maine is the state with the most significant contacts and relationships to the issue.

[¶11] Because Maine is the forum state, we apply Maine's choice of law rules to determine which state's substantive law of workers' compensation immunity applies. *State Farm Mut. Auto. Ins. Co. v. Koshy*, 2010 ME 44, ¶ 21, 995 A.2d 651. For choice of law issues arising in personal injury cases, Maine

follows the "most significant contacts and relationships" approach adopted by the American Law Institute in the Restatement (Second) of Conflict of Laws §§ 145, 146 (A.L.I. 1971), Westlaw (database updated Sep. 2025). *Koshy*, 2010 ME 44, ¶ 22, 995 A.2d 651; *Flaherty v. Allstate Ins. Co.*, 2003 ME 72, ¶ 16, 822 A.2d 1159 (quotation marks omitted). Under this approach, "the local law of the state where the injury occurred determines the rights and liabilities of the parties, unless, with respect to the particular issue, some other state has a more significant relationship . . . to the occurrence and the parties." *Koshy*, 2010 ME 44, ¶ 22, 995 A.2d 651 (quoting Restatement (Second) of Conflict of L. § 146). In applying this test, we have stated that "it is necessary to isolate the issue, to identify the policies embraced in the laws in conflict, and finally to examine the contacts with the respective jurisdictions to determine which jurisdiction has a superior interest in having its policy or law applied." *Collins v. Trius, Inc.*, 663 A.2d 570, 573 (Me. 1995).

[¶12] In making this determination, we consider the First Circuit's decision in *Robidoux v. Muholland*, 642 F.3d 20 (1st Cir. 2011), to be persuasive. *Robidoux* was premised on almost identical facts: a Massachusetts resident was hired by a Massachusetts staffing firm and sent to work at a Rhode Island job site for a contractor that was not incorporated in either state, was injured on

that job site, and collected workers' compensation benefits from the staffing firm's insurer in Massachusetts. *Id.* at 21-22. The issue was whether the workers' compensation immunity law of Massachusetts or Rhode Island applied. *Id.* at 21. On summary judgment, the trial court ruled that Rhode Island law applied; on appeal, the First Circuit reversed, concluding that Massachusetts law governed the immunity claim. *Id.* at 22, 28.

[¶13] The First Circuit determined that Massachusetts had a significant interest in the extent to which its residents were compensated for workplace injuries, as well as in allocating liability for that compensation—specifically, in permitting insurers to recoup benefits from third parties, thereby decreasing the cost of workers' compensation insurance. *Id.* at 26. Although Rhode Island had an interest in applying its conduct-regulating rules to events occurring in the state, the court deemed its interest in the application of its workers' compensation immunity statute minimal where no party to the case was a Rhode Island resident. *See id.* at 26-27. Accordingly, although the action involved "substantial contacts" with Rhode Island, the court held that these contacts were "simply insufficient to outweigh Massachusetts'[s] superior interests in this case," especially where Massachusetts's contacts with the litigation were "not insubstantial." *Id.* at 28.

8

[¶14]  The interests of Maine and Massachusetts in the case before us do not differ in any meaningful way from those of Rhode Island and Massachusetts in *Robidoux*.  Valmont-Olivier is a Massachusetts resident who was employed by a staffing firm incorporated in a third state and authorized to do business in Massachusetts.  Following his injury, he filed a workers' compensation claim in Massachusetts, which ultimately settled.  Envirovantage is a New Hampshire corporation.  Maine's ties to this litigation are that the relationship between Valmont-Olivier and Envirovantage was centered on a Maine job site and the injuries occurred in Maine.  As no Maine resident is a party to the action and Valmont-Olivier filed for and received workers' compensation benefits in Massachusetts, "honoring the purposes underlying workers' compensation has become primarily an issue of Massachusetts concern."  *See id.* at 27; *see also Collins*, 663 A.2d at 573 (applying Canadian damages law to an action arising out of a Maine accident, where the parties were Canadian residents and "Canada has demonstrated a profound interest in achieving a measure of uniformity in tort recovery among Canadian residents").

[¶15]  For these reasons, the court did not err in concluding that the Massachusetts law of workers' compensation immunity applied to this action.[7]

---

[7]  To be clear, the choice of law analysis may be different for different issues.  Thus, although we determine that Massachusetts law applies to determine the issue of workers' compensation

**B.      Under Massachusetts workers' compensation law, Envirovantage is not immune from an action for negligence.**

[¶16]    Envirovantage contends that an analysis of Massachusetts workers' compensation law leads to the same conclusion as under Maine law: it is immune from suit.  We disagree.

[¶17]   The Massachusetts Workers' Compensation Act "provides the exclusive remedy for claims brought by an injured employee against an employer."  *Molina v. State Garden, Inc.*, 37 N.E.3d 39, 43 (Mass. App. Ct. 2015). That said, "the Act leaves open the possibility that, notwithstanding receipt of workers' compensation benefits from the employer, an injured employee may bring tort actions against other entities."  *Id.* at 44.  Indeed, a defendant is eligible for immunity under the Act only if it satisfies a two-part test known as the *Lang* immunity test: (1) the defendant must be "an insured person liable for the payment of workers' compensation benefits to the injured employee" and (2) the defendant must be "the direct employer of the employee."  *Id.* (quoting *Lang v. Edward J. Lamothe Co.*, 479 N.E.2d 208, 209 (Mass. App. Ct. 1985) (alterations omitted)).

---

immunity, that does not mean that Massachusetts law necessarily applies to the tort issues in this case.

[¶18]  Neither party contests the court's finding that Envirovantage was Valmont-Olivier's direct employer under prong two of the *Lang* immunity test. Accordingly, the only issue is whether Envirovantage satisfied prong one of the *Lang* immunity test, that is, whether it was "an insured person liable for the payment of workers' compensation benefits to the injured employee."  *See Molina*, 37 N.E.3d at 44 (quotation marks and alterations omitted).

[¶19]  Resolution of this issue requires an understanding of the distinction between "general" and "special" employers under Massachusetts law.  This distinction arises in matters such as the present case, in which one employer lends its employee to a third party; in such a case, the lending employer is deemed to be the "general employer," and the third party is deemed to be the "special employer."  *See* 3 Arthur Larson & Lex K. Larson, *Larson's Workers' Compensation Law* § 67.01(1) (2006); *Molina*, 37 N.E.3d at 41 n.4. Under these circumstances, the special employer satisfies prong one of the *Lang* immunity test only if "the general and special employer have agreed that the [special employer] shall be liable for carrying workers' compensation insurance and paying workers' compensation benefits."  *Molina*, 37 N.E.3d at 45.

[¶20] It is undisputed that Envirovantage was a special employer under Massachusetts law. Accordingly, the determinative question is whether Envirovantage and Enviro Staffing "agreed that [Envirovantage was] liable for carrying workers' compensation insurance and paying workers' compensation benefits." *Id.*

[¶21] Envirovantage argues that it had such an agreement with Enviro Staffing, because it agreed to pay Enviro Staffing the cost of workers' compensation coverage as part of the payment for Enviro Staffing's services. Under Massachusetts law, however, such an arrangement does not qualify under prong one of the *Lang* immunity test as an agreement that Envirovantage would be liable for workers' compensation benefits. *See Numberg v. GTE Transport, Inc.*, 607 N.E.2d 1, 2 (Mass. App. Ct. 1993) (holding that a special employer's agreement to pay a general employer "periodically a specified amount attributable to the cost of providing workers' compensation benefits" did not satisfy the applicable standard, because "[t]he effect of the financial terms of the agreement between [the general employer] and [the special employer] was not to shift responsibility for payment of workers' compensation benefits to [the special employer], but to assure [the general employer] a profit after paying all of the various costs of supplying [the special

12

employer] with [workers]"); *see also Robidoux*, 642 F.3d at 24 (applying Massachusetts law and determining that a special employer was not liable for workers' compensation and so not immune, even though the special employer paid the general employer a rate that "effectively reimbursed" the general employer for workers' compensation insurance).[8]

The entry is:

Order denying summary judgment affirmed.

---

[8] Envirovantage cites two decisions, *Mareiro v. N. Coast Sea-Foods Corp.*, No. 2019-00218, 2019 WL 5089256, at *3 (Mass. Super. Ct. Sep. 24, 2019), and *Moura v. Cannon*, No. 4:17-40166-TSH, 2021 WL 4422964, at *9 (D. Mass. Sep. 27, 2021), for the proposition that its agreement with Enviro Staffing sufficed under Massachusetts law to render it immune. To begin with, these decisions are nonprecedential: they are unreported trial court orders, *Mareiro* from a state trial court and *Moura* from the United States District Court for the District of Massachusetts. Furthermore, in each of those cases the general employer had an "alternate employer endorsement" in its workers' compensation policy. *Mareiro*, 2019 WL 5089256, at *3; *Moura*, 2021 WL 4422964, at *9. This is an arrangement that the Massachusetts courts have specifically held serves to immunize the special employer from suit. *See Molina*, 37 N.E.3d at 45-46. There is no record evidence that Enviro Staffing had an alternate employer endorsement in its workers' compensation policy here, rendering these cases inapplicable.

Envirovantage also contends that the fact that it had its own workers' compensation insurance policy supports a finding that it was liable for workers' compensation benefits and accordingly immune under Massachusetts law. The cases cited by Envirovantage for this point, however, do not involve the general-special employer relationship. *See Fleming* v. *Shaheen Bros.*, 881 N.E.2d 1143, 1147-48 (Mass. App. Ct. 2008); *Nutter v. Partners Healthcare Sys., Inc.*, No. 1881CV02093, 2021 WL 11717011, at *4-*6 (Mass. Super. Ct. Aug. 13, 2021). Envirovantage points to no Massachusetts case law suggesting that the fact that a special employer has its own workers' compensation policy, in addition to the workers' compensation policy provided by the general employer, is relevant to prong one of the *Lang* immunity test.

Jeffrey T. Edwards, Esq. (orally), and John J. Cronan III, Esq., Preti, Flaherty, Beliveau & Pachios, LLP, Portland, for appellant Envirovantage, Inc.

Francis X. Quinn, Esq., and Christopher Fischer, Esq. (orally), Boynton Waldron Doleac Woodman & Scott, P.A., Portsmouth, New Hampshire, for appellee Roberto Valmont-Olivier

Cumberland County Superior Court docket number CV-2023-207
For Clerk Reference Only